UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| QUINCY CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-00500-JPH-MJD |
| ) | |
| GREG EATON Physical Plant Director, ) | |
| individually and in his official capacity, ) | |
| CHRIS NICHOLSON Lt., individually and in his ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

For the reasons explained in this Entry, the defendants' motion for summary judgment, dkt. [54], is **granted.**

**I. Background**

Indiana prisoner Quincy Clark brought this 42 U.S.C. § 1983 civil rights action against three defendants who work at the Wabash Valley Correctional Facility ("Wabash Valley"), Richard Brown (Warden), Greg Eaton (Physical Plant Director) and Lt. Chris Nicholson (Correctional Officer). Dkt. 2. Mr. Clark alleges that he was exposed to extreme cold from December 15 until December 29, 2017, and that the defendants were deliberately indifferent to that condition, in violation of the Eighth Amendment. The claim against Warden Brown was dismissed at screening. Dkt. 8. Defendants Eaton and Nicholson have moved for summary judgment. The summary judgment motion is fully briefed and ripe for resolution.

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosps. Corp.* 892 F.3d 887, 893 (7th Cir. 2018).

## III. Discussion

### A. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Clark as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At all times relevant to this lawsuit, Mr. Clark was confined at Wabash Valley.

On December 12, 2017, the rooftop heater exchange that heats the B-1200 cell block burned out. Dkt. 56-1, ¶ 3. A replacement exchange heater, which was located onsite, was immediately installed. *Id.*, ¶ 4; dkt. 56-3; dkt. 60-1 at 7.[1]

Upon learning that the heat exchange had broken, Lt. Nicholson ordered the issuance of extra blankets for inmates on the B-1200 cell block, instructed that the range doors be left open to help regulate heat, and instructed that temperatures in the B-1200 cell block be monitored. Dkt. 56-2, ¶¶ 4-6; dkt. 56-3.

On December 15, 2017, Mr. Eaton was transferred into the B-1200 range. Dkt. 61, ¶ 10. He contends that between December 15, 2017, and December 29, 2017, the temperatures outside ranged from 3 to 43 degrees. Dkt. 60-1 at 3. Mr. Clark states that during this time, he did not receive any extra blankets. Dkt. 61, ¶ 12.

The replacement heater exchange burned out on December 23, 2017, no earlier than 1:00 p.m. *Id.*, ¶ 6; dkt. 56-2, ¶ 3.[2] By 2:00 p.m., Bryan Marley, a maintenance supervisor, notified Kenny Mitchell, another maintenance supervisor, of the second burnout. *Id.*, ¶ 8. Mr. Mitchell then immediately sent Tim Squire, a maintenance foreman, to Indianapolis to obtain an emergency propane heater from Bob Gibson, the Indiana Department of Correction's overall physical plant director. *Id.*, ¶ 9. Mr. Eaton states that Mr. Squire installed the propane heaters between 9:00 and 10:00 p.m. on December 23, 2017 – the same day as the burnout. *Id.*, ¶ 11.

Defendant Eaton believed that the emergency propane heaters were powerful enough to heat the B-1200 range, *id.*, ¶ 10. Mr. Clark states that those heaters were not powerful enough to

---

[1] Another replacement heater exchange was ordered from Reznor HVAC within a couple of days of the failure, but it required approximately six weeks to manufacture. Dkt. 56-1, ¶ 5. The second replacement heater exchange was later delivered by Reznor and installed on February 6, 2018. *Id.*, ¶ 13.

[2] It was later learned that the heater exchange controller software was improperly installed by one of the Wabash Valley vendors. Dkt. 56-1, ¶ 7. This caused the heater exchanges to power on too quickly, burning them out. *Id.*

3

keep the B-1200 range warm, dkt. 60 at 2, 4; dkt. 61, ¶ 14. A report to Lt. Nicholson on December 26 indicated that the temperature on the 700 range was 58/59 degrees and the temperature in the B-1200 range was "almost the same." *Id.*; dkt. 56-4.

Replacement propane tanks were installed on December 28, 2017. Dkt. 56-1, ¶ 12. Other than the period from no earlier than 1:00 p.m. to no later than 10:00 p.m. on December 23, 2017, the B-1200 range was heated with either a heater exchange or propane heaters. Dkt. 56-1, ¶ 14.

Mr. Clark was transferred off the B-1200 range on December 29, 2017, because of problems with the heat. Dkt. 61, ¶¶ 6-7.

The March 7, 2018, response to his grievance states that extra blankets were issued and all offenders on the B-1100 and B-1200 ranges were moved off the ranges on 12/29/18 [sic] because of "no heat." Dkt. 60-1 at 6; dkt. 60-1 at 5 (the heat "was not" repaired). Mr. Eaton's response to the grievance acknowledged that there had been multiple issues with the heat, they were working to resolve them, parts had been ordered and received and were being installed. Dkt. 60-1 at 6.

Mr. Clark was seen by a nurse on January 3, 2018, complaining about having headaches and nausea from inhaling fumes from a propane heater for two days in late December. Dkt. 56-5. He states that he also complained about the cold but was told that the heat was not working and it was not a medical issue. Dkt. 61, ¶ 20. This conversation with the nurse occurred after Mr. Clark had been transferred off the B-1200 range. Dkt. 56-5.

### B.  Analysis

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive

4

adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted). Yet prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 833-34.

To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

### 1. Objective component

To satisfy the objective component, a plaintiff must show "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, … 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted).

The Seventh Circuit has considered various levels and durations of cold temperatures— and accommodations for those temperatures—in determining whether a constitutional violation exists. *See Haywood v. Hathaway,* 842 F.3d 1026, 1030 (7th Cir. 2016) (Eighth Amendment

5

would have been violated if inmate had been confined for 60 days in a cell with a broken window and temperatures below freezing with blowers blowing and guards refusing to provide blankets or a coat). In *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009), the Seventh Circuit held that allegations of being denied adequate clothing in the winter such that the inmate "suffered from hurt ears and numb hands, felt frostbite, and caught colds" did "not rise to the level of the objectively serious harm necessary to show an Eighth Amendment violation." *Id*. The inmate was provided a winter coat, boots, and hat and "did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter." *Id.* at 646, 648.

An inmate's allegations that it was so cold in his cell every winter that "ice formed on the walls and remained throughout the winter" created material questions of fact of whether the prison's standard-issued clothing and bedclothing were adequate to combat the cold and whether the defendants knew of the cold and deliberately ignored it. *Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997); *see also Gillis v. Litscher*, 468 F.3d 488, 490 (7th Cir. 2006) (allegations that inmate was forced to sleep naked on concrete floor and had to walk around his cell 14 hours a day to try to stay warm were severe enough to go to trial). These cases teach that courts must examine multiple factors, including the severity of the cold, its duration, whether the prisoner has alternative means to protect himself from the cold, and whether there are other uncomfortable conditions in addition to the cold, in evaluating the objective component, and that no single factor is dispositive. *Dixon*, 114 F.3d at 644.

Here, the defendants have presented evidence showing that the only time there was no heat on the B-1200 range was for nine hours on December 23, 2017, when the second heater exchange failed. It took that amount of time for facility staff to obtain and install emergency propane heaters.

6

Defendant Eaton testified in his affidavit that the "emergency propane heaters were powerful enough to heat the B-1200 range," dkt. 56-1, ¶ 10. There is evidence that when the temperature in the B-1200 range was measured, it was around 58/59 degrees. Dkt. 56-2, ¶ 6.

Mr. Clark states in his affidavit that for 14 days the heat in his cell block was not adequate. Dkt. 61. He takes issue with the defendants' timeline of events regarding when certain repairs were made and when replacement means of heat were installed. *Id.* Mr. Clark testified in his affidavit that there was inadequate heat in his cell and that he did not receive an extra blanket. Dkt. 61, ¶ 14.

Mr. Clark has not designated evidence from which a reasonable jury could find objectively serious harm necessary to show an Eighth Amendment violation. "[A] plaintiff may not rely on mere allegations or denials in his complaint when opposing a properly supported motion for summary judgment." *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020). Indeed, after a defendant meets his burden at the summary judgment stage, the plaintiff must "go beyond the pleadings" to identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Here, Mr. Clark has not articulated how facts in the record "show[] that there is a genuine issue for trial" on the objective component of his deliberate indifference claim. *See id.* In his response brief, Mr. Clark contends that several pieces of evidence support this element of his claim. First, Mr. Clark argues that an "offender grievance response report," dkt. 60-1 at 6, and an "offender tort claim," *id.* at 5, show that he "was removed" from the range because it had "no heat," *see* dkt. 60 at 3. The "grievance response report" states that on December 29, 2017, "all the offenders were moved off the B-1100 & B-1200 ranges because of no heat." Dkt 60-1 at 6. And the "offender tort claim" staff response "confirm[s] that there w[ere] hot water and heat issues" from December 19 through December 28, 2017." *Id.* at 5. But neither of these pieces of evidence contradict the defendant's designated evidence showing that a

7

replacement exchange heater, which was located onsite, was immediately installed on December 19. Dkt. 56-1 ¶¶ 3–4; dkt. 56-3. Thus, this cited evidence does not suggest that there was inadequate heat in the range before the nine-hour period on December 29.

Second, Mr. Clark claims that Mr. Nicholson's December 12, 2017 email to him "verif[ies] that the heater exchange on B-1200 ranger was ineffective." Dkt. 60 at 3. Mr. Clark is correct that this emails says the original heater exchange was "broken," but it also states that "maintenance has a spare one" and that Mr. Nicholson would "issue extra blankets," "leave the range doors open to help regulate the heat," and "monitor the temperatures." Dkt. 60-1 at 7. Again, this does not support his claim that there was inadequate heat.

Next, Mr. Clark argues that "video surveillance" and his *future* testimony, neither of which are in the record, will show that the "actual date [the] propane heater was placed on range either December 27 or 28" rather than on December 23, 2017. Dkt. 60 at 4. But a "court may consider only admissible evidence in assessing a motion for summary judgment." *Anderson v. City of Rockford*, 932 F.3d 494, 509 (7th Cir. 2019). Because neither the video nor Mr. Clark's future testimony are in the record, they are not admissible evidence at this time and thus cannot contradict the defendants' evidence that the propane heaters were installed on December 23. *See* dkt. 56-1 at 2.

Finally, Mr. Clark claims that an affidavit of a Rashaad Hogan, a fellow Wabash Valley inmate, shows that the entire B-West cell range was without heat. Dkt. 60 at 4. But Mr. Hogan's affidavit did not cite dates; it merely said "[i]n the months of December and January," he faced "unbearable" conditions "in part due to no heat in winter time." Dkt. 60-1 at 10. Without greater specificity on the dates when he experienced "no heat" or any assertion about what caused that lack of heat, Mr. Hogan's declaration cannot show evidence of an objectively serious harm.

The sparse record before the Court is thus readily distinguished from cases where there was evidence presented to support the objective component. *See Henderson v. DeRobertis,* 940

F.2d 1055, 1057-58 (7th Cir. 1991) (record showed, among other things, broken windows, no heat on the cellblock, and temperatures in the cellblock that were below freezing); *Dixon*, 114 F.3d at 642 (record showed, among other things, that for three consecutive winters temperatures in the cellblock were 40 degrees, there was ice on the walls, and unfulfilled requests for extra blankets and space heaters). But even if the record before the Court supported the objective component, the defendants would still be entitled to summary judgment because Mr. Clark has not designated evidence that could support a finding that the defendants were deliberately indifferent to the conditions created by the problems with the heating system.

### 2. Subjective component

To satisfy the subjective component, a plaintiff "must next establish a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (internal quotations omitted). In addition, negligence or even gross negligence is not sufficient to support a § 1983 claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018). Here, the question is whether there is evidence from which a jury could find that defendants Eaton and Nicholson were deliberately indifferent to the problems with the heat and corresponding cold temperatures. In other words, does the evidence show they were aware of the extreme cold conditions but ignored it or failed to take reasonable measures in response.

The evidence reflects that the heater exchange that heated B-1200 range burned out on December 12, 2017, and a replacement was installed the same day. The replacement heater burned out no earlier than 1 p.m. on December 23, 2017. Wabash Valley did not have another replacement onsite, so a maintenance foreman drove to Indianapolis to pick up an emergency propane heater that was installed later that night. The range was not heated for a period of approximately nine

9

hours on December 23. Propane heaters were used to heat the range from the night of December 23, 2017, until Mr. Clark was transferred off the range on December 29, 2017.

There is little evidence of Mr. Eaton's personal involvement with the heating issues as Physical Plant Director of Wabash Valley. There is evidence that various subordinate maintenance supervisors reported the issues to Mr. Eaton and that a foreman drove to pick up and then installed an emergency propane heater. This was all presumably done with Mr. Eaton's knowledge and approval. Of greater significance is that there is no evidence that Mr. Eaton ignored the heating problems or that he failed to monitor the situation or take reasonable steps to have his staff repair the necessary equipment. Therefore, no reasonable jury could find that Mr. Eaton was deliberately indifferent to the cold conditions on range B-1200.

With respect to Lt. Nicholson, the record shows that he immediately took steps in response to the exchange breaking on December 12 by ordering that inmates be provided extra blankets, the doors kept open to allow warmer air into the cell block, and that the temperature in the cell block be monitored. The record further shows that the temperate on B-1200 range was reported to Lt. Nicholson to have been approximately 58/59 degrees on December 26, and that the inmates on the B-1200 range were moved on December 29 due to problems with the heat in that range. Mr. Clark has not designated evidence showing that Lt. Nicholson was informed that Mr. Clark had not received an extra blanket; that he knew the air temperatures were excessively cold in the B-1200 range; or that he knew that keeping the doors to the range open and using replacement heaters would not provide sufficient heat to the B-1200 range. No reasonable jury could find that Lt. Nicholson ignored the problems with heating on the B-1200 range or that he failed to take reasonable measures to address the conditions. Lt. Nicholson is therefore entitled summary judgment on the deliberate indifference claim brought against him.

### IV. Conclusion

For the reasons discussed above, the defendants' motion for summary judgment, dkt. [54], is **granted.**

Judgment consistent with the screening Entry of December 11, 2018, dkt. [8], and this Entry shall now issue.

**SO ORDERED.**

Date: 11/25/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

QUINCY CLARK
108657
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

All electronically registered counsel